UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
ROBERT MALKANI,                                     :
                                                    :
                               Plaintiff,           :
                                                    :
               v.                                   :          24-CV-1009 (SFR)
                                                    :
GARTNER, INC.,                                      :
                                                    :
                               Defendant.           :
------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

Plaintiff Robert Malkani was employed by Defendant Gartner, Inc. ("Gartner), from 2018 to 2024. After he was terminated in early 2024, Malkani brought a 12-count Complaint alleging discrimination in violation of federal law and breach of contract. Gartner responded by moving to dismiss Counts Three and Four and to compel all remaining claims to arbitration. For the reasons stated below, the Motion to Dismiss and to Compel Arbitration (ECF No. 17) is denied.

## I.      BACKGROUND

### A.      Factual Background

I accept as true the following well-pleaded facts in the Complaint.[1]

---

[1] Malkani included a 179-paragraph affidavit from Malkani as an attachment to the memorandum of law submitted in opposition to Gartner's Motion. ECF No. 25-1, at 1-34. Malkani also submitted an exhibit containing an email chain between Malkani and his former supervisor, Pautz, as well as a performance review document. *Id*. at 35-41. But at argument, counsel properly conceded that these documents should not be considered because they are not integral to the Complaint. Tr. 15 ("We concede that [the documents] need not be relied upon."). I therefore decline to consider these extraneous materials. *See Cortec Indus., Inc. v. Sum Holding L.P*., 949 F.2d 42, 47 (2d Cir. 1991) (stating that the "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); *Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657 (LJL), 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023) ("A

Robert Malkani, a man in his mid-50s, was hired as a Managing Vice President at Gartner, Inc., a management consultant firm. Compl. ¶¶ 5, 11-12, ECF No. 1. Malkani joined the firm in 2018 as a Vice President and Head of Product Marketing and was eventually promoted to Managing Vice President in the Global Sales Strategy and Operations team in October 2021. *Id.* ¶¶ 25, 35. In January 2023, after Gartner underwent a reorganization of some of its business components, Malkani began reporting to Eric Pautz. *Id.* ¶ 44.

The Complaint asserts that Pautz created "an intimidating, hostile, and abusive work environment based on sex and based on [Malkani's] age." *Id.* Early in their relationship, Pautz offered to "help [Malkani] handle things in this new virtual world we're in." *Id.* ¶ 51. Malkani understood Pautz to be insinuating that Malkani was unfamiliar with technology. *Id.* In June 2023, Pautz began referring to Malkani using the nickname "Gramps." *Id.* ¶ 106. Although Pautz sometimes told Malkani he was just kidding, Malkani felt "embarrassed and humiliated" by these comments. *Id.* ¶ 108-10.

The Complaint alleges that Pautz undermined Malkani's responsibilities and stature within the company. Soon after Malkani began to report to Pautz, Pautz terminated or reassigned most of Malkani's initiatives. *Id.* ¶ 66. Pautz referred derisively to Malkani's work as "McKinsey bullshit." *Id.* In March 2023, Pautz diminished Malkani's team size. *Id.* ¶ 74. And in April 2023 Pautz prevented Malkani from presenting in a meeting to Gartner's CEO.

---

plaintiff who has eschewed attaching a document upon which it relies as an exhibit to the complaint, and who has not explicitly incorporated the document by reference and included the relevant allegations about the document in the complaint, is not ordinarily permitted—when it suddenly becomes expedient—to rely upon the document by attaching it to a declaration submitted in response to a motion to dismiss."), *aff'd*, *In re Wade Park Land Holdings, LLC*, No. 23-591-BK, 2024 WL 3024648 (2d Cir. June 17, 2024).

*Id.* ¶¶ 81-84. Pautz frequently assigned work directly to Gartner employees who reported to Malkani, which caused confusion for Malkani and his direct reports. *Id.* ¶¶ 87-88. The Complaint alleges that Pautz "purposely sabotage[ed]" Malkani by sowing confusion within his team. *Id.* ¶ 88. Pautz delegated staffing decisions to another of his direct reports, a woman who was junior to Malkani, which Malkani understood to constitute an effective demotion. *Id.* ¶ 137. Pautz required Malkani to include him in all meetings with senior Gartner colleagues. *Id.* ¶ 98.

The Complaint recounts several instances where Pautz lost his temper with Malkani or humiliated Malkani in front of colleagues. During a one-on-one meeting, after Malkani asked Pautz to consult with him "before simply changing the process," Pautz reacted by exclaiming: "I don't have to ask for your fucking permission about anything – ya' get it – I tell you what it is. Can you process that?" *Id.* ¶ 70. In the summer of 2023, Pautz humiliated Malkani in front of his colleagues when he said "Rob . . . Rob . . . we're not doing any damn Steerco." *Id.* ¶ 116. At another team meeting in September 2023, Pautz reacted to a question from Malkani by stating: "I don't have time for that grammar school bullshit!" *Id.* ¶ 117. Finally, the Complaint describes one heated meeting between Malkani and Pautz on December 4, 2023. Pautz reacted to Malkani reporting his team's progress on a new initiative by exclaiming, "[y]ou don't know what the fuck you're doing." *Id.* ¶ 161. Pautz further exclaimed that Malkani should "pick up a fucking pen next time and write down the words coming out of my mouth so you can get it right. Cause I don't know if there's something going on with you or what." *Id.* Malkani understood Pautz to be insinuating that Malkani was "suffering cognitive dysfunction due to his advanced age." *Id.*

The Complaint states that Malkani's colleagues expressed serious concern about the way he was treated by Pautz. In June 2023, one of Malkani's colleagues urged Malkani to report Pautz to HR because he believed that "Pautz has it out for you." *Id.* ¶ 93. In the summer of 2023, after Pautz reacted with derision to one of Malkani's suggestions in a team meeting, two of Malkani's colleagues "reached out to express their dismay at how Mr. Pautz had treated Plaintiff on the call." *Id.* ¶ 116. In the fall of 2023, Malkani's team reported to him that they believed Pautz was subjecting Malkani to "the most dysfunctional, outright hostile and abusive experience they had ever witnessed in their lives." *Id.* ¶ 151. As a result of Pautz's conduct, Malkani "experienced weight loss and trouble sleeping." *Id.* ¶ 183.

According to the Complaint, Pautz often used unwelcome sexual innuendo in private meetings with Malkani. On March 22, 2023, in response to Malkani's question about working with a female colleague, Pautz responded the colleague was "a wonderful human . . . and I would get wonderful all over that." *Id.* ¶ 79. On September 18, 2023, referring to another female colleague, Pautz told Malkani that she was "one of the loveliest humans you'll ever meet in your life . . . not that I'd get lovely all over that." *Id.* ¶ 122. On November 14, 2023, when Malkani asked Pautz about a recent team reorganization that meant Malkani would report to a different female colleague, Pautz stated "I guess there could be worse things than being under" that colleague and that "she's wonderful." *Id.* ¶ 157.

The Complaint describes several instances where Pautz allegedly implied Malkani was having sex with a colleague or adept at a particular sex act. On June 20, 2023, Pautz, in the course of describing a project that would require detailed writing, said: "You're going to have to toss some word salad on this one, Malkani. You went to law school. I bet you can toss some word salad, right?" *Id.* ¶ 101. The Complaint contends that this statement referred to the phrase

"tossing the salad," which the Complaint describes as "a well-known slang reference to a specific act of oral sex." *Id.* ¶ 102. On July 10, 2023, in a one-on-one meeting with Malkani, Pautz asked: "Yo . . . how's the salad tossing going with James? You two making it happen?" *Id.* ¶ 112. Pautz later stated, "Hey, with James. Just keep him away from other people. You can do whatever you want with him. Just keep away from other humans." *Id.* ¶ 113. The Complaint states that these references to sex acts were "unwelcome and inappropriate." *Id.* ¶ 113. On October 2, 2023, after Malkani confirmed that he was working on an assignment Pautz had directed him to pursue, Pautz responded "Yeah, we now know you toss the salad with the best of them . . . you seem good like that so have at it okay?" *Id.* ¶ 124. The Complaint also alleges one instance of physical touch. On September 28, 2023, when Malkani met Pautz in person for the first time, Pautz declined to shake Malkani's hand and instead pulled him in and "gave him a bear hug that lasted a moment too long and was a bit too forceful." *Id.* ¶ 143.

The Complaint states that Pautz did not undermine, micromanage, harass, or sabotage the women who reported directly to him. Soon after Pautz began to supervise Malkani, the only other man who reported to Pautz transitioned to another team, which the Complaint attributes to Pautz. *Id.* ¶ 62. In addition to Malkani, Pautz's direct reports in 2023 included Magda Drobnicki, *id.* ¶¶ 35, 63, and Deirdre Walsh, *id.* ¶ 99, both of whom are women. The Complaint alleges that Pautz consistently prioritized Drobnicki and Walsh's advancement at Malkani's expense. *Id.* ¶¶ 93, 182. Drobnicki confirmed to Malkani that she was not experiencing any challenges with Pautz. *Id.* ¶ 88. Moreover, the Complaint alleges upon information and belief that Pautz used sexually explicit language and innuendo only with Malkani. *Id.* ¶ 86.

5

The Complaint describes at least three instances where Malkani attempted to raise concerns about Pautz with senior colleagues. *Id.* ¶¶ 59, 152, 154-55. In the third of these meetings, on December 19, 2023, Malkani met with a senior HR executive and "reported that Mr. Pautz's behavior had become intolerable and that his hostile and abusive behavior and misconduct based on age and sex had to stop." *Id.* ¶ 164. Unsatisfied with the response he received from these colleagues, Malkani scheduled a meeting with Kate Elsam, a senior Gartner executive. *Id.* ¶ 166. During the meeting on January 9, 2024, Elsam told Malkani that, following a "strategic review" of his unit's performance, Malkani's "role was being eliminated" because Gartner had determined they did not need someone "at his level." *Id.* ¶ 168. Although Elsam told Malkani he could apply for other roles within Gartner, he would need to find a new role by January 30, 2024 or sign a separation agreement. *Id.* ¶ 172. Malkani interviewed for an executive role in another Gartner division. *Id.* ¶¶ 186-90. Malkani was offered a position as Vice President of Product Management. *Id.* ¶ 190. But on February 28, 2024, in his first meeting with his supervisor, Malkani was told that his offer to join the product team was being revoked based on "new information [that] has come to light about your ability to collaborate with our Team NCVI partners." *Id.* ¶ 197.[2] Malkani was terminated from Gartner effective March 1, 2024. *Id.* ¶ 198. The Complaint asserts that the "new information" about Malkani's ability to collaborate with partners was mere pretext for an unlawful termination. *Id.* ¶ 202.

---

[2] The Complaint does not define the acronym "NCVI," but it appears to refer to another Gartner business division.

B.    **Procedural History**

Malkani filed a twelve-count Complaint on June 7, 2024. Compl., ECF No. 1. Gartner moved to dismiss Counts Three and Four and moved to compel all other counts to arbitration. Def. Gartner, Inc.'s Partial Mot. to Dismiss & Compel Arbit. & Stay Proceedings Pending Arbit., ECF No. 17; Def.'s Mem. of L. in Supp. of Mot., ECF No. 17-1 ("Def.'s Mem."). Malkani responded in opposition on September 5, 2024. Pl.'s Mem. of L. in Opp. To Def. Gartner Inc.'s Mot. to Dismiss ("Pl.'s Mem."), ECF No. 25. Gartner replied in support of its Motion on September 27, 2024. Def. Gartner, Inc.'s Reply Br. In Supp. of Mot. ("Def.'s Reply"), ECF No. 31.

The Court (the Honorable Jeffrey Alker Meyer, United States District Judge) heard oral argument on November 1, 2024. Tr. of Mot. Hr'g ("Tr."), ECF No. 45. Following argument, the Court ordered supplemental briefing. First, the Court directed the parties to submit letter briefs analyzing:

> Whether as a matter of law a claim of retaliation for engaging in protected activity of complaining about a sexually hostile work environment qualifies as a "sexual harassment dispute" within the scope of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401-02, and

> Whether Counts Eight and Nine of the complaint allege enough facts to state plausible grounds for relief as to a claim for retaliation against protected activity of complaining about a sexually hostile work environment?

ECF No. 33. The parties filed opening letter briefs on November 8, 2024. ECF Nos. 36, 38. They responded to each other's letter briefs on November 15, 2024. ECF Nos. 39, 41.

The Court also instructed the parties to file letter briefs "with a list of any cases not previously cited by the party and/or any facts that the party believes is subject to judicial notice." ECF No. 34. On November 8, 2024, Malkani identified the facts of which he contends

the Court can take judicial notice. ECF No. 37. Gartner responded to Malkani's letter brief on November 15, 2024. ECF No. 40.

The case was transferred to me on January 7, 2025. ECF No. 42.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

### B.     Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). The FAA thus "establishes 'both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Flores v. N.Y. Football Giants, Inc.*, 150 F.4th 172, 180 (2d Cir. 2025) (quoting *Concepcion*, 563 U.S. at 339). On a motion to compel arbitration, "[t]he district court must first determine whether

an agreement to arbitrate exists between the parties." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). "In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation and internal quotation marks omitted). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id*.

## III.    <u>DISCUSSION</u>

Counts Three and Four allege hostile work environment on the basis of sex. Gartner urges me to dismiss these Counts with prejudice and to compel arbitration of all remaining claims. But as I explain below, I find that Counts Three and Four plausibly state a claim for relief and I conclude that the EFAA shields the entire action from arbitration.

### A.    **Counts Three and Four**

Count Three contends that Gartner is liable for hostile work environment based on sex in violation of Title VII. Compl. ¶¶ 242-48. Count Four—also for hostile work environment— is brought under the Connecticut Fair Employment Practices Act ("CFEPA"). *Id.* ¶¶ 249-55. "Hostile work environment claims brought under Title VII and CFEPA are governed by the same standard." *Riggins v. Town of Berlin*, No. 23-868-CV, 2024 WL 2972896, at *2 n.5 (2d Cir. June 13, 2024) (summary order). Gartner argues both claims should be dismissed with prejudice. Def.'s Mem. 7-16.

#### 1.    **Applicable Standard**

Malkani suggests in his briefing that Counts Three and Four should be evaluated as claims for retaliatory hostile work environment. Pl.'s Mem. 19-22. Malkani urges me to

analyze these Counts under the standard for retaliatory hostile work environment set forth in *Carr v. New York City Transit Authority*, 76 F.4th 172 (2d Cir. 2023).[3] *Id*. Malkani asserts that his claims also meet the more onerous standard for establishing a claim of hostile work environment based on sex set forth in Gartner's briefing. *Id.* at 22-35.

"[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). "Rule 8(a) does not demand that a complaint be a model of clarity but, at a minimum, it requires that each defendant be given fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ortiz v. Consol. Edison Co. of New York, Inc.*, 801 F. Supp. 3d 260, 293 (S.D.N.Y. 2025) (citation and internal quotation marks omitted).

The allegation that Pautz (and by extension Gartner) retaliated against Malkani by subjecting Malkani to a hostile work environment based on a protected complaint appears nowhere within Counts Three or Four, which are the subject of Gartner's Motion. Counts Three and Four do not mention any complaints or other forms of protected conduct by Malkani. Counts Three and Four reference the Complaint's previous description of "unwanted sexually charged jokes, insults, innuendo, and explicit sexual discussions about colleagues." Yet these incidents, as set forth in the Complaint, occurred *prior* to the meeting Malkani attended in

---

[3] In *Carr*, the Second Circuit held that a plaintiff establishes a *prima facie* case of retaliation by demonstrating "(1) []he engaged in protected activity, (2) the defendant was aware of that activity, (3) []he was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." 76 F.4th at 180. The Second Circuit rejected the proposition that a "retaliatory hostile work environment" claim should be analyzed the under the "severe and pervasive" standard applied to hostile work environment claims. *Id.* at 181.

December 2023 where he first accused Pautz of harassing him on the basis of age and sex. Compl. ¶ 164. Accordingly, I conclude that Counts Three and Four do not provide fair notice of a claim of retaliatory hostile work environment. Therefore, I decline to consider Counts Three and Four under the standard established in *Carr*, 76 F.4th at 180-81.

Thus, I analyze the plausibility of Counts Three and Four under the standard articulated by the Second Circuit for claims alleging hostile work environment based on sex. "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)). "To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris*, 510 U.S. at 21). At the motion to dismiss stage, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

Gartner does not dispute that the Complaint adequately supports the inference that Malkani subjectively perceived his workplace to be hostile or abusive. Rather, Gartner contends that (1) the Complaint fails to support the inference that Pautz (Malkani's supervisor)

harassed Malkani on account of his sex, Def.'s Mem. 7-10, and (2) even if Pautz engaged in sexual banter, the workplace was not so permeated by harassment as to alter the conditions of Malkani's employment, *id.* at 10-16.

### 2.    Severe and Pervasive Environment

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Nonetheless, as the Second Circuit has observed, "[t]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997).

"Courts must examine 'all the circumstances' in determining whether an environment is 'hostile' or 'abusive,' including the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Gray v. Minn. Mining & Mfg. Co.*, 732 F. Supp. 3d 184, 191 (D. Conn. 2024) (quoting *Harris*, 510 U.S. at 23). "To survive a motion to dismiss, a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Anderson v. City of New York*, 712 F. Supp. 3d 412, 429 (S.D.N.Y. 2024) (citation and internal quotation marks omitted).

Malkani contends that Pautz created an objectively hostile work environment by encouraging Malkani to have sex with a colleague. Pl.'s Mem. 2. But that fact is not pleaded

12

in the Complaint.[4] Nor can I conclude that Pautz's innuendo and sexualized comments about Malkani and female coworkers were so severe or pervasive, standing alone, as to alter the conditions of Malkani's employment. *See, e.g.*, *Borden v. City of New York*, No. 23-CV-8330 (RPK) (CLP), 2025 WL 754147, at *6 (E.D.N.Y. Mar. 10, 2025) ("For sexist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of sexual enmity.") (quoting *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 458 (S.D.N.Y. 2013); *cf. Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 546 (S.D.N.Y. 2024) (holding that objective requirement satisfied where complaint alleged "the employer ma[de] clear that one of the terms of employment is that the employee attempt to become romantically involved with third parties").

However, in considering all of the Complaint's allegations, I conclude that the Complaint plausibly alleges that Pautz created a hostile work environment in the way he managed and interacted with Malkani. According to the Complaint, Pautz belittled and demeaned Malkani, both in private meetings and in front of colleagues. *See* Compl. ¶¶ 70, 117, 161. The Complaint alleges that this conduct was so concerning that Malkani's colleagues repeatedly urged him to seek help, offered to speak to HR on his behalf, and described Pautz's management practices towards Malkani as "the most dysfunctional, outright hostile and

---

[4] At Judge Meyer's invitation, the parties submitted letter briefs on whether the court could take judicial notice of the meaning of the phrase "toss the salad." Malkani, pointing to a definition contained in Urban Dictionary, contends the phrase is a well-known slang for the sex act of anilingus. ECF No. 37, at 1. Gartner responds that I should decline to take judicial notice of this phrase because (1) Malkani's source—Urban Dictionary—is "entirely lacking in reliability," and (2) the Complaint uses the phrase in a different form than the Urban Dictionary definitions cited by Malkani. ECF No. 40, at 1-3. Even adopting Malkani's proffered definition, the Complaint nonetheless fails to allege that Pautz instructed or even hinted that Malkani should engage in a sex act with a colleague.

13

abusive experience they had ever witnessed in their lives." *Id.* ¶ 151. According to the Complaint, Malkani's mental and physical health suffered as a result. *Id.* ¶ 183.

These allegations suggest that Pautz altered the conditions of Malkani's employment for the worse. The Second Circuit recently reversed the dismissal of a hostile work environment complaint that alleged similar facts. *Brown v. Montefiore Health Sys., Inc.*, No. 24-3078-CV, 2025 WL 2985389, at *3 (2d Cir. Oct. 23, 2025) (summary order). The plaintiff alleged she experienced an objectively severe workplace on account of "excessive scrutinization and micromanaging," and "the removal of duties and responsibilities" that eventually took a toll on the plaintiff's "physical, mental and emotional" health. *Id.* at *3. The Second Circuit, "reviewing the totality of the circumstances," held that the complaint "plausibly alleged that the alleged harassment could be related to [plaintiff's] status in a protected class." *Id.* at *4.

Other courts in this District have held that similar allegations state a claim of hostile work environment. *See, e.g.*, *Berroa v. Dep't of Developmental Servs.*, No. 3:19-CV-0867 (JCH), 2020 WL 12863317, at *9 (D. Conn. Sept. 17, 2020) (concluding that plaintiff stated claim because "Berroa alleges not only myriad ways in which she was undermined or marginalized at work, but also a demotion, multiple transfers, reductions in her caseload, and denials of stipends and overtime"); *Johnson v. Connecticut Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 3:17-CV-00901 (JAM), 2018 WL 306697, at *8 (D. Conn. Jan. 5, 2018) (concluding that hostile work environment plausibly stated claim to relief because of its "detailed allegations" concerning the manner in which defendant "marginalized plaintiff, refused to communicate critical information to him, and relied instead on plaintiff's subordinate—all severely compromising plaintiff's status and ability to do his job"); *see also*

14

*Depamphilis v. Town of Newington*, No. 3:25-CV-00524 (SVN), 2026 WL 674501, at \*7 (D. Conn. Mar. 10, 2026) (allegations that defendants "undermined, denigrated, and affirmatively sidelined Plaintiff," in combination with overt acts of sexual harassment, stated claim of hostile work environment based on sex).

Nor am I convinced that *Littlejohn* requires another result. In *Littlejohn*, the Second Circuit affirmed dismissal of a complaint of hostile work environment premised on allegations that a supervisor "was impatient and used harsh tones," required the plaintiff to conduct menial tasks, and "wrongfully reprimanded" the plaintiff. 795 F.3d at 321. I find these circumstances are distinct insofar as the Complaint plausibly describes a more severe form of treatment that (1) negatively impacted Malkani's health and (2) led Malkani's colleagues to repeatedly urge him to complain to HR.

### 3.    On Account of Sex

Gartner argues that Malkani fails to connect the hostile work environment he experienced to his protected characteristic: his sex. Def.'s Mem. 7-10.

"It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). For this reason, the complaint must include sufficient "allegation[s] of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of [his] sex." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013).

At the same time, "[n]othing in our Title VII jurisprudence, however, requires a plaintiff to append to each allegation of harassment the conclusory declaration 'and this was done because of my sex.' Instead, what is needed is the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her sex." *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001), *as amended* (Apr. 20, 2001). "There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not." *Alfano v. Costello*, 294 F.3d 365, 375 (2d Cir. 2002). As the Second Circuit has explained, "[a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citation and internal quotation marks omitted).

The Complaint asserts that Malkani—the only man directly supervised by Pautz—was also the only man who was subjected to Pautz's belittling, hostile comments. In addition, the Complaint asserts that Pautz consistently prioritized the advancement of Malkani's female colleagues at Malkani's expense. Compl. ¶¶ 93, 182. The Complaint proceeds to describe the various forms of sexual innuendo used by Pautz to describe the women he worked with. One inference that can be drawn from these allegations is that Pautz preferred working with women and so he treated Malkani differently (and less favorably) than the women who reported directly to Pautz. Of course, this is not the *only* inference that can be drawn from these

16

allegations. But at this stage it suffices that one permissible inference that can be drawn from the facts alleged in the Complaint is that Malkani's supervisor subjected him to a hostile work environment because Malkani is not a woman.

At this stage of the case, Malkani need not establish his claim but must simply state a plausible claim for relief. I must accept all facts that Malkani alleges as true and draw all reasonable inferences in his favor. Accordingly, I conclude Malkani has sufficiently alleged that he was subjected to a hostile work environment based on sex. *Berroa*, 2020 WL 12863317, at *9 (stating that "Title VII claimants 'need only give plausible support to a *minimal inference* of discriminatory motivation'" and the complaint's allegations regarding "differential treatment . . . meet this minimal standard" with respect to hostile work environment claim) (quoting *Littlejohn*, 795 F.3d at 311) (emphasis added by *Berroa* court).

### B.    Motion to Compel Arbitration

Gartner has introduced evidence that Malkani agreed to a binding arbitration provision. ECF No. 17-2, at 9. The EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable *with respect to a case* which is filed under Federal, Tribal, or State law and relates to [a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). Gartner acknowledges that Counts Three and Four are not arbitrable by virtue of the EFAA. Tr. 5. Gartner nonetheless argues that even if I conclude (as I have) that Counts Three and Four state a claim, I should nonetheless compel arbitration of all other claims in this action. Def.'s Mem. 24-26.

In *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535 (S.D.N.Y. 2023), the court reasoned that Congress's decision to use the broad term "case" provides a key indicator that the EFAA "thus does not limit the invalidation to the claim or claims in which that dispute

17

plays a part." *Id.* at 558. As a consequence, the court held that the EFAA "makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute." *Id.* at 561. The *Johnson* court's holding has been widely adopted by district courts in this Circuit—and indeed nationally. *See, e.g.*, *Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 852 (S.D.N.Y. 2025); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024); *Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023). Consistent with this emerging consensus, I similarly conclude that the EFAA shields from arbitration all claims that are properly joined to a non-arbitrable claim. Because Defendants do not contend that any claim in this action is misjoined, I deny the Motion to Compel Arbitration.

## IV.     CONCLUSION

For the foregoing reasons, Gartner's Motion to Dismiss Counts Three and Four and Compel Arbitration is denied. Gartner shall file its Answer on or before April 24, 2026. The parties shall confer and file a Local Rule 26(f) report proposing deadlines for discovery on or before May 15, 2026.

**SO ORDERED.**

New Haven, Connecticut
March 31, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

18